THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
GEORGE BEROUKAS *et al.*, Defendants-Appellees.

Second District    No. 79-775

Opinion filed July 29, 1981.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

Mary Robinson and Kyle Wesendorf, both of State Appellate Defender's Office, of Elgin, and Thomas J. Royce, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The State appeals from an order granting defendants' motion to suppress, contending that two of the defendants, George Beroukas and Kathy

Handley, had no standing to contest the search and that the court erred in finding that there was no probable cause shown for the search.

All three defendants were charged by information with burglary, possession of burglary tools, theft, unlawful use of weapons, possession of a firearm without identification card, and armed violence. Defendant Beroukas was also charged with unlawful possession of a hypodermic syringe.

They filed separate motions to quash their arrests and to suppress evidence. Neither Beroukas' nor Handley's motion alleged a possessory interest in the items seized or any interest in the automobile searched. Kostantouros' motion did allege that he was driving the vehicle the night of the arrest.

A joint hearing on the motions to suppress was held on November 20, 1979. Kostantouros testified that he was driving a 1973 Oldsmobile, which he owned, on Irving Park Road in the early morning hours of August 27, 1979. He overshot the exit to the Holiday Inn and backed up on the shoulder of the road before turning into the parking lot, where a police officer pulled up, demanded his driver's license, ordered him out of the car, and told him he was giving him a ticket for improper backing. The officer asked for his key to the trunk, and Kostantouros responded that he had lost the key while changing a flat tire. The officer then "searched the car all over" and called another officer. Kostantouros denied giving the officer permission to search his car or trunk.

On cross-examination, Kostantouros testified that a pair of gloves, a ski-type hat, four or five screw wrenches, and a flashlight were on the floor of the car in the back seat, but he denied that a crowbar or pry bar was also in the back seat.

Beroukas testified that he and Kostantouros got out of the car without being asked when the officer approached, and that the officer ordered Handley and him into one squad car while Kostantouros was in the other. Beroukas heard Kostantouros tell the officer that he had had a flat tire. Beroukas told the officer that he was dirty because he had had a fight earlier. Beroukas further testified that there were a lot of tools in the back seat of the car, but no pry bars, ski hat, or gloves to his knowledge.

Handley testified that she was not aware of the gun under the seat until the officer removed it and that she did not bend down and put the gun under the seat when she first saw the squad car behind them. She recalled seeing gloves in the front of the car, but did not know if there were pry bars in the back.

Officer Mahlke testified that he observed the Oldsmobile going 50 mph in a 35-mph zone. He followed it and saw it stop and back up in the right lane. He observed "furtive movements" by the two passengers as the car pulled into the parking lot. After the car stopped the driver left the

vehicle and Mahlke approached him, meeting him about two feet from the car. Mahlke told the driver he stopped him for improper backing and asked for his driver's license. Using his flashlight, Mahlke observed a pair of gloves, a ski-mask, and flashlight in the front seat and another pair of work gloves, another ski-type mask, a long crowbar, a small pry bar, and a box of tools in the back.

He then asked Kostantouros why he had the gloves and hat in the front seat, and Kostantouros responded that he had had a flat tire. Beroukas then exited the car and stated that he had changed the tire. Mahlke observed that the hubcaps were dirty and had no fingerprints on them; he thus concluded that no tire on the car had been changed. He then asked Beroukas why his hands were still clean if he had changed the tire, and Beroukas responded that he had used gloves. Mahlke testified that he had not yet entered the car at this point. He had also not received any report of burglaries in the vicinity.

Mahlke asked Kostantouros to open the trunk so he could inspect the tire. Kostantouros said, "Sure, go ahead," and then said, "Oh, I must have lost my trunk key." Mahlke asked Kostantouros if he could try the trunk release button, which Kostantouros said was broken, and Kostantouros said, "Sure, go ahead." Mahlke then entered the front passenger door, reached into the glove compartment, tried the trunk release, and the trunk opened. As he did this he observed a shiny object which appeared to be a gun handle under the front seat. He then arrested defendants for unlawful use of weapons. He later issued a ticket to Kostantouros for improper backing.

On cross-examination, Mahlke admitted that he ran a registration check on the vehicle and found it was registered to Kostantouros. He further stated that he made no search of the car prior to his observation of the gun but was impeached by his preliminary hearing testimony. Mahlke was also further impeached by reference to his police report. In the report he indicated that he had asked Kostantouros about a paper bag in the car, which he said was on the back seat, and when leaning over to retrieve it he saw the gun handle. Defense counsel then asked if the report reflected that Mahlke had observed the gun in the front seat while reaching for a bag in the back seat. After a brief recess in which the judge in chambers told counsel that he believed Officer Mahlke was committing perjury, the hearing resumed and Mahlke declined to answer the pending question concerning the contents of his report.

We first address the question of the right of defendants Beroukas and Handley to contest the search. In a case similar to this, involving passengers in an automobile charged with a possessory offense, the United States Supreme Court has established that "the question is whether the challenged search or seizure violated the Fourth Amendment rights of a

criminal defendant who seeks to exclude the evidence obtained during it." (*Rakas v. Illinois* (1978), 439 U.S. 128, 140, 58 L. Ed. 2d 387, 399, 99 S. Ct. 421, 429.) Under *Rakas*, a defendant must demonstrate a "legitimate expectation of privacy in the invaded place." (439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430.) Clearly, these defendants had no expectation of privacy in the automobile which they did not claim to possess or in the items located in the automobile as to which they also did not assert a possessory interest.

These defendants principally rely on the argument that they had "automatic standing" because they were in a place where they had a right to be at the time of the search and were charged with possessory offenses. Their reliance on *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, as granting automatic standing because they were in a place where they had a legitimate right to be when the search occurred is misplaced. First, the majority opinion in *Rakas* interprets *Jones* on its facts to stand merely "for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." (439 U.S. 128, 142, 58 L. Ed. 2d 387, 400, 99 S. Ct. 421, 430.) And the United States Supreme Court has expressly overruled the granting of automatic standing to a defendant merely because he has been charged with a possessory offense and a search takes place on property on which he has a right to be present. *United States v. Salvucci* (1980), 448 U.S. 83, 95, 65 L. Ed. 2d 619, 630, 100 S. Ct. 2547, 2554.

These defendants seek to avoid *Salvucci* on the basis of their claim that it is not to be given retroactive effect. No authority is cited for this position, and we can find no support for the contention.

Salvucci himself was deprived of automatic standing as to events which occurred at a time when *Jones* had not been expressly overruled. (See also *Rawlings v. Kentucky* (1980), 448 U.S. 98, 103 n.2, 65 L. Ed. 2d 633, 641 n.2, 100 S. Ct. 2556, 2560 n.2.) Moreover, the same court has noted that *Rakas* was "clearly an ill omen" for the automatic standing rule of *Jones*, and that *Salvucci* was "simply an extension of this Court's earlier reasoning in *Rakas*." *Steagald v. United States* (1981), ___ U.S. ___, ___ n.5, 68 L. Ed. 2d 38, 44 n.5, 101 S. Ct. 1642, 1646 n.5.

■■■ In summary, we conclude that even under the principles of *Rakas* the court erred in granting these defendants standing where they made no attempt to show a possessory or privacy interest in the items seized or the vehicle searched and obviously from the facts could not do so. We further conclude that *Salvucci*, since it narrows the class of persons who can assert fourth amendment rights, applies retroactively. (See 3 W. LaFave, Search & Seizure §11.5(d), at 698-99 (1978).) We note that a number of Federal courts have so applied *Salvucci*. (*United States v. Arce* (5th Cir.

1980), 633 F.2d 689, 694; *United States v. Vargas* (1st Cir. 1980), 633 F.2d 891, 899; *United States v. Lace* (D. Vt. 1980), 502 F. Supp. 1021, 1039.) Thus the court erred in granting the motion to suppress as to the defendants Beroukas and Handley.

As to the defendant Kostantouros, who owned the car, no question is raised as to his standing to move to suppress the evidence seized. The State's only contention is that the officers did have probable cause for the search. With this we disagree.

■■■ Where testimony is in conflict and the trial court grants a motion to suppress, the reviewing court must conclude that credibility was resolved in defendant's favor, and the judgment will not normally be set aside where based on conflicting evidence. (*People v. Riggs* (1978), 62 Ill. App. 3d 338, 339.) The impeachment of Officer Mahlke provided grounds for the trial judge to doubt his credibility. The aspects of Mahlke's testimony corroborated by defendants do not compel a finding of probable cause since the defendants all denied the presence of pry bars inside the car and their testimony did not support Mahlke's testimony about the condition of the hubcaps and the sequence of events. Thus, the trial court could have found that Mahlke simply saw a hat, gloves, and a flashlight in the car, became suspicious, and asked to look at the trunk. The mere observation of such innocuous items would not justify a search or continued questioning. (See *People v. Kelly* (1979), 76 Ill. App. 3d 80, 86.) The court also reasonably concluded that Kostantouros did not consent to the search. The record justifies the conclusion that the gun was not found until after the search had begun.

We therefore affirm the judgment as to the defendant, Panagiotis Kostantouros. As previously noted, the remaining defendants did not have standing to join in the motion to suppress. As to those defendants the judgment is reversed.

Affirmed in part and reversed in part.

LINDBERG and VAN DEUSEN, JJ., concur.