[Crim. No. 15696. Fourth Dist., Div. One. Nov. 2, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT HELMQUIST, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Certified for publication with the exception of section III.

COUNSEL

Barton C. Sheela and Sheela, Rutherford & Sheela for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—In this search and seizure case we hold federal law now applies after the enactment of California Constitution article I, section 28, subdivision (d); *United States* v. *Leon* (1984) — U.S. — [82 L.Ed.2d 677, 104 S.Ct. 3405] is retroactive; and an alleged misstatement and omissions in the warrant affidavit do not mandate exclusion of the seized evidence. We also decide the execution of the warrant was not unconstitutional.

*Facts*

On April 1, 1983, Sergeant Tricker of the National City Police Department obtained a search warrant for Robert Helmquist's residence based on information supplied by two identified informants that Helmquist was a "fence" for stolen property. The warrant was executed on April 4, 1983. While checking all the rooms for occupants, the police found one of the listed items, a 19-inch Hitachi color television, in plain view on a bedroom dresser. After the police showed Helmquist the search warrant, he told them the items were in a locked room. In the room police found and seized 205 items, 17 of which were later positively identified as stolen property.

Upon Helmquist's motions to return property, to quash the warrants, to suppress illegally seized evidence, (Pen. Code, §§ 1538.5, 1539 and 1540)[2] and to set aside the information (§ 995), the court suppressed the 188 items the police could not allege to be stolen property but otherwise denied Helmquist's requests. Helmquist pleaded guilty to receiving stolen property (§ 496, subd. 1) and preserved for appeal his objections to the constitutionality of the search of his home.

I

 Helmquist initially argues the affidavit did not contain probable cause to support the issuance of a search warrant. However, the recent

---

[2]All statutory references are to the Penal Code unless otherwise specified.

United States Supreme Court decision in *United States* v. *Leon, supra,* — U.S. — held the Fourth Amendment does not bar use of evidence obtained by the police acting in objectively reasonable reliance on a search warrant subsequently found to be unsupported by probable cause. (*Id.*, at p. — [82 L.Ed.2d at pp. 697-698, 104 S.Ct. at pp. 3420-3421].) After *Leon,* the correctness of Helmquist's assertion of insufficient probable cause may be irrelevant. ■■■ To determine whether *Leon* applies to this case we must first decide whether federal law now controls after the enactment of California Constitution article I, section 28, subdivision (d) and, if so, whether *Leon* is retroactive.[3]

The provisions of Proposition 8 apply to Helmquist's case since the crime was committed in March 1983 which is after the initiative's June 9, 1982, effective date. The Attorney General argues Proposition 8 abrogated the state exclusionary law and therefore federal exclusionary law (including *Leon*'s good faith exception) now controls.

A

California Constitution article I, section 28, subdivision (d) states: "Except as provided by statute hereinafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and postconviction motions and hearings . . . ." In some areas the California Constitution affords citizens " 'a broader security against unreasonable searches and seizures not required by the United States Supreme Court' (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 549 [119 Cal.Rptr. 315, 531 P.2d 1099]; but see Cal. Const., art. I, § 28, subd. (d) [repeal of state exclusionary rule]) . . . ." (*People* v. *Chavers* (1983) 33 Cal.3d 462, 467 [189 Cal.Rptr. 169, 658 P.2d 96].) A difference may exist here since the United States Supreme Court has recognized a good-faith-warrant exception to the exclusionary rule which the California Supreme Court has not adopted. However, if article I, section 28, subdivision (d) repeals the California exclusionary rule as the notation in *Chavers* indicates, the distinctions between state and federal law on this issue would disappear.[4]

In determining the effect which should be given article I, section 28, subdivision (d), we first look to the language of the provision and then to

---

[3]We recognize that the Supreme Court in *Leon* cautioned lower appellate courts against adopting an "inflexible practice of always deciding whether the officers' conduct manifested objective good faith before turning to the question whether the Fourth Amendment has been violated." (— U.S. at p. — [82 L.Ed.2d at p. 699, 104 S.Ct. at p. 3422].) Our inclination to initially consider the good faith issue in the present case is due to the importance of this issue to lower courts and law enforcement officials. Our willingness to undertake this inverted sequence of analysis here should not be taken to apply to future cases.

[4]Preliminarily, it is clear the evidence seized here satisfies the predicate of article I, section 28, i.e., it is relevant. It proved Helmquist's possession of stolen property, an essential element of the charged crime.

the intent of its enactors. The language of the provision clearly expresses its broad scope. Helmquist observes, however, that Proposition 8 does not specifically refer to the exclusionary rule, searches, seizures or confessions, nor does it express an intent to change the means by which law enforcement officials can legally obtain evidence. Helmquist thus suggests that the provision be interpreted merely to require the admission of all *legally obtained* relevant evidence, in effect arguing that Proposition 8 has no effect on California search and seizure law.

This interpretation, however, conflicts directly with the analysis of the Legislative Analyst which was presented to voters considering the adoption of Proposition 8: "Under current law certain evidence is not permitted to be presented in a criminal trial or hearing. For example, evidence obtained through unlawful eavesdropping or wiretapping, *or through unlawful searches of persons or property,* cannot be used in court. This measure generally would allow most relevant evidence to be presented in criminal cases subject to such exceptions as the Legislature may in the future enact by a two-thirds vote. The measure could not affect *federal* restrictions as the use evidence." (Ballot Pamp., Proposed Amend. to Cal. Const., Criminal Justice—initiatives, statutes and constitutional amendments, Primary Elec. (June 8, 1982) p. 32, first italics added.) ▮ Such contemporaneous analysis, though not conclusive, is often helpful in ascertaining the electorate's intent in enacting an initiative. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245-246 [149 Cal.Rptr. 239, 583 P.2d 1281]; *In re Quinn* (1973) 35 Cal.App.3d 473, 483 [110 Cal.Rptr. 881], disapproved on other grounds in *State of California* v. *San Luis Obispo Sportsman's Assn.* (1978) 22 Cal.3d 440, 448, fn. 6 [149 Cal.Rptr. 482, 584 P.2d 1088].) ▮ We accordingly cannot accept Helmquist's suggested interpretation. We further observe that the *Chavers* notation cited earlier (*ante,* p. 612) strongly suggests our Supreme Court would have difficulty with Helmquist's argument.

Helmquist further argues the Legislature intended state exclusionary rules to apply since it enacted two amendments to section 1538.5 after the enactment of Proposition 8. He cites the "well-established principle of statutory construction that when the Legislature amends its statutes without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction." (*Marina Point Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) Apparently relying on the portion of Proposition 8 which allows the creation of admissibility exceptions by a two-thirds vote of the Legislature (art. I, § 28, subd. (d)), Helmquist argues that the amendments to section 1538.5 enacted unanimously by the Legislature constitute an implied resurrection of the "independent state grounds" doctrines of search and seizure law as they existed prior to the adoption of Proposition 8.

The initial problem with Helmquist's argument is that the broader state exclusionary rule on which he relies was not based on "judicial construction" of section 1538.5. Rather cases such as *People* v. *Brisendine, supra,* 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099] and its progeny were founded on article I, section 13 of the California Constitution. (*Id.,* at p. 552.) Thus, any legislative action in amending section 1538.5 gives rise to no logical inference regarding the Legislature's view of judicial decisions relying on the independent state grounds of the California Constitution.[5]

Moreover the amendments to section 1538.5 cited by Helmquist—chapters 625 (Sen. Bill No. 1744)[6] and 1505 (Assem. Bill No. 2984)[7] of the Statutes of 1982—are purely procedural in nature and belie any suggestion that the Legislature in enacting them intended to create any exceptions to Proposition 8. In fact, section 2 of Senate Bill Number 1744 specifically stated that the amendment "does not create any new grounds for exclusion of evidence that did not exist prior to this act. The Legislature intends that the changes made by this act are procedural only." This specific language and the procedural corrective nature of the second amendment, Assembly Bill Number 2984, indicates the Legislature intended no substantive changes, in the law as it existed, which was the law as established by Proposition 8. Helmquist's argument directly contradicts this expressed intent. We also note how unlikely unanimous passage of these amendments would be if indeed what the Legislature intended to do was to effectively overturn the recently passed initiative measure. For these reasons we hold article I, section 28, subdivision (d) is the controlling provision and requires that federal rather than state constitutional law be applied to resolve questions of the admissibility of illegally seized evidence.

### B

Since federal law applies in the instant case, our next determination is whether the recent United States Supreme Court decision in *United States*

---

[5]We recognize a related argument focusing on the language of section 1538.5, subdivision (a) (2) (v) which allows for the suppression of evidence seized in "violation of federal or state constitutional standards." If one views the post-Proposition 8 amendments to section 1538.5 as indicating a legislative intent to reenact this language, it follows that section 1538.5 constitutes statutory authority for the suppression of evidence seized in violation of either Constitution. As we note subsequently in a related context, Proposition 8 does nothing to change the interpretation of either the federal or state Constitution as to what constitutes an illegal search or seizure; it merely relates to remedy. (See *post,* fn. 9.) Since the seizure of evidence pursuant to a warrant issued without probable cause clearly violates both the Fourth Amendment and article I, section 13 of the California Constitution, it can be argued that section 1538.5, subdivision (a) (2) (v) constitutes the legislative creation of an exception to the general admissibility rule of article I, section 28, subdivision (d). As we explain, however, we cannot view the procedural amendments to section 1538.5 as indicating a legislative intent to create such an exception.

[6]Senate Bill No. 1744 amended section 1538.5 to permit the prosecution to seek reinstatement of a complaint dismissed after the granting of a suppression motion at a preliminary hearing.

[7]Assembly Bill No. 2984 amended section 1538.5 so that "minor errors" in an indictment or information could be corrected without dismissal.

v. *Leon* controls. To resolve this issue, we must decide whether *Leon* should be applied retroactively. If *Leon* is retroactive and applies, the only relevant question is whether the police possessed an "objectively reasonable belief" in the validity of the warrant issued by the magistrate. (— U.S. at p. — [82 L.Ed.2d at p. 696, 104 S.Ct. at p. 3419].) If *Leon* does not apply, we must fully determine whether the warrant was supported by probable cause. (See, e.g., *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317].)

■ The retroactivity of a United States Supreme Court decision is, of course, a question of federal law. ■ It is a question which has been the subject of extensive discussion by the high court in matters of criminal procedure, at least since the decision in *Linkletter* v. *Walker* (1965) 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731], which declined to apply the state exclusionary rule of *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684] to convictions which were final on the date *Mapp* was announced. (See also, e.g., *Tehan* v. *Shott* (1966) 382 U.S. 406 [15 L.Ed.2d 453, 86 S.Ct. 459]; *Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *Desist* v. *United States* (1969) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030]; *United States* v. *Peltier* (1975) 422 U.S. 531 [45 L.Ed.2d 374, 95 S.Ct. 2313]; *United States* v. *Johnson* (1982) 457 U.S. 537 [73 L.Ed.2d 202, 102 S.Ct. 2579].) These cases offer minimal guidance, however, because they each involve the very distinguishable situation in which a newly declared Fourth Amendment rule of criminal procedure afforded defendants greater protections and benefits than they had enjoyed before.[8] In contrast, *Leon* is a decision which restricts the Fourth Amendment benefits afforded defendants.[9] Numerous courts and commen-

---

[8]Although Helmquist does not explain the basis for his contention that *Leon* should not be applied retroactively, he presumably relies on that line of Fourth Amendment cases which has given "prospective only" effect to new decisions on the theory that the purpose of the exclusionary rule is to deter *future* official misconduct. (See *United States* v. *Peltier, supra,* 422 U.S. at pp. 538-539 [45 L.Ed.2d at p. 382]; *Williams* v. *United States* (1971) 401 U.S. 646, 654-655 [28 L.Ed.2d 388, 396, 91 S.Ct. 1148], *Desist* v. *United States, supra,* 394 U.S. at p. 249 [22 L.Ed.2d at p. 255]; see also *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10 [136 Cal.Rptr. 409, 559 P.2d 1028].) This rationale is, of course, inapplicable here. Because *Leon* limits the scope of the exclusionary rule, its purpose has nothing to do with deterring official misconduct. If anything, *Leon* lessens such deterrence. The purpose of *Leon* is to assure that a greater amount of relevant, probative evidence is admissible. Thus, *Leon* generally enhances the reliability of the fact-finding process, a factor which has been cited in *support* of retroactive application of a new rule. (See *Williams* v. *United States, supra,* 401 U.S. at p. 653 [28 L.Ed.2d at p. 395]; see also *Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 38-39, fn. 11 [196 Cal.Rptr. 704, 672 P.2d 110].)

[9]We deliberately avoid characterizing this analysis as being applicable to decisions which restrict the "rights" of criminal defendants. *Leon,* in our view, says nothing about the scope of an individual's Fourth Amendment right to be protected from search warrants issued without probable cause. It merely represents a determination that the remedy afforded persons whose rights have been violated should be something other than the suppression of evidence of their criminal activity. (See — U.S. at p. — [82 L.Ed.2d at pp. 692-693, 104 S.Ct. at pp. 3412-3413].)

tators have recognized that in such situations, the new restrictive rule should be applied retroactively to all cases not final on appeal. (See, e.g., *State* v. *Bouchles* (Me. 1983) 457 A.2d 798, 801; *People* v. *Beroukas* (1981) 98 Ill.App.3d 990 [425 N.E.2d 5, 8]; 3 LaFave, Search and Seizure (1978) pp. 698-699; see also *id.* (1984 pocket supp.) at p. 276.) This result derives from the underlying purpose of decisions such as *Leon* which restrict the scope of the exclusionary rule. The exclusionary rule is based on considerations collateral to the determination of guilt or innocence. (*Linkletter* v. *Walker, supra,* 381 U.S. at pp. 637-638 [14 L.Ed.2d at p. 613]; *Williams* v. *United States, supra,* 401 U.S. at p. 653 [28 L.Ed.2d at p. 395].) The court has repeatedly recognized the inherent tension between the exclusionary rule and the goal that criminal defendants be "acquitted or convicted on the basis of all the evidence which exposes the truth." (*Alderman* v. *United States* (1969) 394 U.S. 165, 175 [22 L.Ed.2d 176, 187, 89 S.Ct. 961]; see also *Leon, supra,* — U.S. at p. — [82 L.Ed.2d at pp. 684, 689, 104 S.Ct. at pp. 3409, 3413].) It has therefore adopted a balancing test for assessing whether the benefits of applying the exclusionary rule to deter unlawful police conduct outweigh the social costs associated with such application. (*Id.,* at pp. ——— [82 L.Ed.2d at pp. 687-688, 104 S.Ct. at pp. 3412-3413]; *Stone* v. *Powell* (1976) 428 U.S. 465, 486-489 [49 L.Ed.2d 1067, 1083-1085, 96 S.Ct. 3037]; see also *Illinois* v. *Gates* (1983) 462 U.S. 213, 254-255 [76 L.Ed.2d 527, 560-561, 103 S.Ct. 2317, 2342] (conc. opn. of White, J.).) Decisions like *Leon* represent a determination that in those situations, the benefits of applying the exclusionary rule—in terms of the deterrence of official misconduct—are not outweighed by the interference with the truth-finding function which the exclusion of relevant probative evidence would occasion. (*Leon, supra,* — U.S. at p. — [82 L.Ed.2d at p. 698, 104 S.Ct. at p. 3421].) That policy determination having been made, there is no rational basis for applying the rule to exclude such relevant evidence in this case or any similar case not final on appeal.[10] (See 3 LaFave, Search and Seizure, *supra,* at pp. 698-699.)

## II

After concluding *Leon* applies to the instant case, we must determine whether suppression still would be appropriate. Helmquist contends the officer had no reasonable grounds for believing the warrant was properly

---

[10]We note that our decision here to apply *Leon* retroactively should have limited effect. Where evidence obtained with a search warrant unsupported by probable cause was suppressed and the defendant was acquitted, the rules of double jeopardy will prevent the People from applying *Leon* retroactively. Where the defendant was properly convicted despite suppression of the evidence, our decision will have no effect. The issue we address here will most often, if not exclusively, arise in cases where the defendant unsuccessfully sought suppression of evidence and is appealing the trial court's adverse determination of his request. In these cases, the purpose of *Leon* is not furthered by excluding evidence obtained in good faith by police officers executing search warrants which may not have been supported by probable cause.

issued. He supports his argument by quoting *Leon* as follows: "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." (— U.S. at p. — [82 L.Ed.2d at pp. 698-699, 104 S.Ct. at p. 3421].)

Helmquist argues the affidavit contained deliberate misrepresentations and omissions.[11] Specifically, he claims Sergeant Tricker attempted to mislead the magistrate by including only one of two statements made by an informant regarding the presence of stolen property in Helmquist's house which was the basis for the search warrant. The informant, Abel Gonzales, had stolen a 19-inch color television set during a burglary. Gonzales corroborated another informant's statement that the stolen property from this burglary was sold to Helmquist at his business. Gonzales stated that Helmquist had told him the 19-inch television Gonzales had stolen was so good he put it in his own home and was using it himself. Helmquist claims the interrogation transcript also reveals a second version of this statement in which Helmquist said he was *going to* put the television in his home. The statement Helmquist identifies as the first version he describes as "volunteered" by Gonzales and followed by questions by Sergeant Tricker. In response to these questions, Helmquist argues Gonzales modified his statement so it was less conclusive as to whether the television was in fact in Helmquist's home. He suggests that Sergeant Tricker used the first and more conclusive version by Gonzales in his affidavit for the warrant. The affidavit actually stated: "I further believe the 19 inch color television set sold to Bob Helmquist by Jandura and Gonzales is at Helmquist's residence at 354 Orange Avenue."

Helmquist also raised this contention in the trial court. In denying his section 1538.5 motion, the court stated it was not impressed with Helmquist's characterization of the differences in Gonzales' statements and his desire to elevate them into misdeeds by the officer. "But, at any rate, this evidence does no more than add a little grist to that general proposition that he said he either had taken or was going to take some of it home as a basis for thinking that he either had or will. To me it makes not the slightest difference in the persuasiveness of the probable cause that the television would be at home whether the man said he was going to take it or whether he said he had already had taken it. . . .

"I don't think that the difference could conceivably, or that the added information could conceivably have influenced the magistrate in his determination as to the warrants; and I can see no cause at all to strike from

---

[11]Other than arguing that the magistrate was misled by Sergeant Tricker's alleged misstatements and omissions, Helmquist does not contend there is any other basis for concluding that Tricker's reliance on the warrant was not "objectively reasonable." (See *Leon, supra,* — U.S. at p. — [82 L.Ed.2d at pp. 698-699, 104 S.Ct. at pp. 3421-3422].)

Officer Tricker's affidavit the statement that I concluded he believed it was true at the time he made it." Likewise, we do not believe the magistrate was misled by Officer Tricker's statement in the affidavit or that Officer Tricker knew his statement was false or acted in reckless disregard of the truth.

Helmquist also asserts that Sergeant Tricker did not advise the magistrate of the true character of Gonzales, specifically that he was a drug user who was frequently under the influence of drugs. We question the materiality of this omission since it seems irrelevant to Gonzales' credibility as an informant. We cannot see how this information would assist the magistrate in determining the accuracy of Gonzales' statement regarding the location of the stolen property sold to Helmquist. Moreover, the magistrate could reasonably infer from the other informant's statements in the affidavit that Gonzales used drugs. The affidavit contained Jandura's statement that Jandura and Gonzales on two occasions received $40 worth of cocaine and $25 worth of heroin for some of the stolen property they had sold.

Thus the absence of an express statement in the affidavit that Gonzales used drugs did not constitute a material omission. As with Helmquist's previous contention, we do not believe the magistrate was misled by this omission or Tricker intended that result. Therefore suppression of the seized evidence is not warranted.

III*

. . . . . . . . . . . . . . . . . . . . . . . .

*Disposition*

Judgment affirmed.

Work, J., and Duffy, J.,† concurred.

A petition for a rehearing was denied November 26, 1984, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied February 14, 1985. Mosk, J., Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.

---

*See footnote 1, *ante*, page 609.
†Assigned by the Chairperson of the Judicial Council.