[Crim. No. 14552. Third Dist., Feb. 11, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ALAN GILLIARD, Defendant and Appellant.

COUNSEL

William D. Kopper, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jane N. Kirkland and Susan J. Orton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PUGLIA, P. J.—A jury convicted defendant of mayhem (Pen. Code, § 203) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and found that in the commission of both offenses defendant used a firearm. (Pen. Code, § 12022.5.) The trial court, relying on the public safety exception to

the *Miranda* rule (*New York* v. *Quarles* (1984) 467 U.S. 649 [81 L.Ed.2d 550, 104 S.Ct. 2626]), overruled defendant's objection to the admission of his postarrest reponse to a police question asked without a prior *Miranda* warning and waiver.[1] The propriety of that ruling is challenged on appeal. We shall affirm.

At 2:30 a.m. Officer Joe Pane received a report on his police radio of "shots fired" in the vicinity of 35th Avenue and Wymore; the suspect was reportedly a Black male. As Pane approached the area he observed defendant walking away from 35th Avenue. Defendant, a Black male, was shirtless, appeared to have blood on his pants and shoes and was carrying a small shaving kit. Defendant appeared drunk and in a daze. Pane arrested defendant for being drunk in public (Pen. Code, § 647, subd. (f)) and believing he may have been involved in the reported shooting, transported him to the location where the shots reportedly were fired. There Pane was met by Officers Rise and Mandalla who had arrived earlier. The victim, who was bleeding profusely from severe wounds to her face and head, was also present.

When Rise had arrived on the scene, the victim was in front of a house on 35th Avenue where defendant resided on occasion. Mandalla had located the victim's car a short distance away from the residence. He observed what appeared to be bullet holes in the windshield and side of the car; in the interior, the headrest on the driver's seat contained small holes the size of shotgun pellets. Mandalla retrieved the paper wadding from a shotgun shell inside the vehicle and noticed there was a large amount of blood on the seat and steering wheel. He also discovered a .20 gauge shotgun shell in the gutter in front of defendant's residence. Prior to Pane's arrival, Mandalla made a brief search of the area for weapons but did not find any.

When Pane arrived, he was informed no weapon had been located. Pane asked the defendant where the gun was. Defendant replied he had thrown the gun in some bushes near the area where he was arrested. No *Miranda* warning was given before Pane's question.

Pane and other officers returned with defendant to the scene of the arrest where they searched unsuccessfully for the weapon. So far as the record shows, it has not been found.

At trial, defendant objected to testimony of his statement to Pane that he hid the gun. Defendant argued that any statement procured by police questioning not preceded by a *Miranda* warning and waiver was inadmissable because he was under arrest for another offense and was a suspect in this

[1] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

case. The trial court admitted the statement, holding the "public safety" exception to *Miranda* announced in *New York* v. *Quarles, supra,* 467 U.S. 649, applied even though the charged crimes were committed prior to the *Quarles* decision.

Appellant contends on appeal that (1) the court erred prejudicially in applying the public safety exception to the *Miranda* rule retroactively and, even if applicable retroactively, (2) the facts shown do not justify application of the public safety exception.[2]

The charged offenses were committed April 28, 1984. The decision in *New York* v. *Quarles, supra,* was announced on *June 12,* 1984.

## I.

In *Quarles,* a woman reported to police officers she had just been raped, described her assailant and informed the officers he was armed with a gun and had entered a nearby supermarket. A police officer entered the store and saw defendant, who matched the description given by the victim. Defendant ran to the rear of the store with the officer in pursuit. The officer momentarily lost sight of defendant, but soon overtook and apprehended him. The officer frisked defendant and discovered he was wearing an empty shoulder holster. After handcuffing defendant, the officer asked him where the gun was. Defendant nodded toward some empty cartons and responded "[t]he gun is over there." The officer retrieved the gun from one of the cartons, formally arrested defendant, and read him his *Miranda* rights. Because defendant had not first been given *Miranda* warnings, the trial court excluded defendant's statement and its fruit, the gun.

Announcing a "public safety" exception to the rule of *Miranda,* the Supreme Court reversed, stating: " In a kaleidoscopic situation such as the one confronting these officers, where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the

---

[2]Defendant also contends his statement should not have been admitted because Officer Pane tricked him into answering the question by telling him he probably would be arrested only for being drunk in public. It appears that at the scene of the crime, doubt developed whether or not the victim would press charges. As a result Pane concluded the only charge for which defendant could be held was drunk in public. Pane told defendant "the most he was going to be in custody for was drunk in public," and "We just want to . . . get the gun off the streets." Defendant was not then arrested on felony charges and was ultimately taken to jail on the misdemeanor drunk charge only.

Defendant did not object on grounds of involuntariness in the trial court. As the evidence falls far short of demonstrating coercion as a matter of law, defendant may not raise involuntariness for the first time on appeal (*People* v. *Beagle* (1972) 6 Cal.3d 441, 452 [99 Cal.Rptr. 313, 492 P.2d 1]).

exception which we recognize today should not be made to depend on *post hoc* findings at a suppression hearing concerning the subjective motivation of the arresting officer. Undoubtedly most police officers, if placed in Officer Kraft's position, would act out of a host of different, instinctive, and largely unverifiable motives--their own safety, the safety of others, and perhaps as well the desire to obtain incriminating evidence from the suspect.

"Whatever the motivation of individual officers in such a situation, we do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety. . . .

"The police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.

"In such a situation, if the police are required to recite the familiar *Miranda* warnings before asking the whereabouts of the gun, suspects in Quarles' position might well be deterred from responding. . . . [H]ad *Miranda* warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.

"We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination. We decline to place officers such as Officer Kraft in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissable, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them." (Fns. omitted; *Quarles, supra,* 467 U.S. at pp. 656-658 [81 L.Ed.2d at pp. 557-558].)

## II.

We consider whether the trial court erred in applying *Quarles* retroactively to this case.

■ As a general rule, judicial decisions apply retroactively. (*Solem* v. *Stumes* (1984) 465 U.S. 638, 642 [79 L.Ed.2d 579, 586, 104 S.Ct. 1338].) "Any exceptions to this general principle must find their source in the 'interest of justice' or 'the exigencies of the situation.'" (*United States* v. *Estrada* (9th Cir. 1984) 733 F.2d. 683, 685.)

Recent California decisions have retroactively applied a United States Supreme Court decision limiting the Fourth Amendment exclusionary rule. *People* v. *Helmquist* (1984) 161 Cal.App.3d 609 [207 Cal.Rptr. 718], and *People* v. *MacAvoy* (1984) 162 Cal.App.3d 746 [209 Cal.Rptr. 34], considered whether *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], should be applied retroactively to cases not yet final when it was decided. *Leon* holds the Fourth Amendment does not bar the use of evidence obtained by the police acting in reasonable reliance on a search warrant subsequently found to be unsupported by probable cause. Both *Helmquist* and *MacAvoy* hold *Leon* should be applied retroactively.

In *Helmquist,* the court considered a number of cases which had refused retroactive application of United States Supreme Court decisions broadening the scope of the exclusionary rule. The *Helmquist* court noted that each case involved the distinguishable situation in which a newly declared Fourth Amendment rule of criminal procedure afforded defendants greater protections and benefits than they had enjoyed before. (*Helmquist, supra,* 161 Cal.App.3d at p. 615.) "In contrast, *Leon* is a decision which restricts the Fourth Amendment benefits afforded defendants. Numerous courts and commentators have recognized that in such situations, the new restrictive rule should be applied retroactively to all cases not final on appeal. [Citations.]" (Fn. omitted; *Helmquist, supra,* at pp. 615-616.) In the same vein the Ninth Circuit declared: "We have never denied retroactive application to a new decision that *limits* the Fourth Amendment's exclusionary rule. . . . [¶] [D]ecisions limiting the exclusionary rule are fully retroactive." (Italics in original; *United States* v. *Estrada, supra,* 733 F.2d at p. 685.)[3]

---

[3]Although a new rule limiting defendants' rights presents the stronger case for retroactivity, the federal Supreme Court, considering the situation where a new rule benefitting defendant represented a " 'substantial break with prior precedent,' " recently held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." (*Griffith* v. *Kentucky* (1987) 479 U.S. 314, [93 L.Ed.2d 649, 661, 107 S.Ct. 708].) *Griffith* involved retroactive application of *Batson* v. *Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] which held that a criminal defendant could establish a prima facie case of unconstitutional racial discrimination based on the prosecution's use of peremptory challenges to strike members of defendant's race from the jury venire, thereby shifting the burden to the prosecution to justify the challenges on racially neutral grounds (*Griffith, supra,* 479 U.S. at p. __ [93 L.Ed.2d at p. 654].)

*Helmquist* and *MacAvoy* involved the application of the exclusionary rule to claimed Fourth Amendment violations. Here the asserted violation is of the right against self-incrimination. However, we see no distinction. *Miranda,* like the Fourth Amendment's exclusionary rule, is a prophylactic requirement created to deter unlawful police conduct. (See *New York* v. *Quarles, supra,* 467 U.S. at pp. 654-655 [81 L.Ed.2d at pp. 555-556].) *Quarles* held there is no police misconduct in failing to provide *Miranda* warnings when the public safety is in peril. "When a subsequent decision holds the police conduct reasonable, the rationale for the exclusion disappears," and there is no reason not to apply that decision retroactively. (*United States* v. *Estrada, supra,* 733 F.2d at p. 685.)

Applying *Quarles* retroactively to cases not yet final on appeal is appropriate and fully consistent with the interests of justice.

### III.

Defendant asserts that the facts here do not justify application of the public safety exception. Defendant attempts to distinguish *Quarles* as a case where the officers knew the suspect had a gun and, because they were in hot pursuit and the suspect was only momentarily out of their view, could reasonably believe it had been disposed of in a public place. Although Officer Pane had ample reason to believe that a gun was used, defendant asserts there was no reasonable basis to believe it was disposed of in a public place. Defendant argues the gun could as easily have been locked in a car or house, or lodged in numerous places outside the reach of the public.

In *Quarles,* the suspect was detained, frisked, and handcuffed prior to any questioning and was surrounded by at least four police officers when questioned about the gun. Nothing in the *Quarles* opinion suggests the police were then concerned for their own safety. Moreover, there was no imminent urgency; the supermarket was almost deserted and presumably could have been cordoned off. (*New York* v. *Quarles, supra,* 467 U.S. at p. 676 [81 L.Ed.2d at p. 570] (dis. opn. of Marshall, J.).) Nor was there any lack of opportunity for the officers to provide *Miranda* warnings prior to any questioning. It was enough, however, that the officers reasonably believed the gun had been disposed of in a public place to justify an inquiry as to its location before *Miranda* warnings were required. As noted by the Supreme Court, had the suspect been provided *Miranda* warnings before such questions were asked, he might well have been deterred from responding, leaving a dangerous weapon at large in a public area. By allowing questions regarding the weapon prior to the issuance of *Miranda* warnings, a situation posing a peril to the public safety may be defused. (*Quarles, supra,* 467 U.S. at pp. 657-659 [81 L.Ed.2d 557-559].)

The facts here fall well within the scope of *Quarles.* Officer Pane arrested defendant and drove him to the scene. There he learned that a gun had been used but had not yet been recovered. Therefore, he asked defendant where the gun was. As in *Quarles,* there was ample time and opportunity to provide a *Miranda* warning and the officers were not in fear for their own safety. Pane's question was specifically directed only to the recovery of the missing gun. The scene of the crime and arrest were in a residential area. As Pane testified, he asked defendant where the gun was simply to remove it from a location where it might be retrieved by a child or other member of the public.

*People* v. *Turner* (1984) 37 Cal.3d 302 [208 Cal.Rptr. 196, 690 P.2d 669], is of no assistance to defendant. In *Turner,* defendant and his accomplice were tracked by police officers 12 miles into the desert and arrested. Without first giving *Miranda* warnings, the officers asked them, "where the weapons were" and secured admissions similar to the ones in this case and in *Quarles.* The trial court admitted the statements over objection. Applying *Miranda,* the Supreme Court rejected the trial court's rationale that the questioning was merely investigatory and held the statements should have been supressed as the product of unwarned custodial interrogations, but that their erroneous admission was harmless. As a makeweight, the trial court had also cited the officers' safety as excusing the failure to give *Miranda* warnings. The Supreme Court did not directly address this rationale, simply noting that the unarmed suspects were apprehended at gun point 12 miles into the desert, handcuffed and "otherwise immobilized" before any questioning. (At pp. 316-319.) Quite apart from the question whether public safety concerns are sufficiently compelling on these facts to invoke the *Quarles* exception, no such exception existed when *Turner* was decided because it predated *Quarles* by several months. The significance of *Turner* for our purposes is that it is a straightforward application of the federal exclusionary rule explicated in *Miranda* and its progeny. So also is our decision in this case, the difference being that since *Turner,* the public safety exception which we apply here has been authoritatively subsumed within *Miranda.* (See also *People* v. *Cole* (1985) 165 Cal.App.3d 41, 51-52 [211 Cal.Rptr. 242].)

The trial court did not err in admitting defendant's statement. The judgment is affirmed.

Regan, J., and Carr, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 1987. Mosk, J., was of the opinion that the petition should be granted.