[No. G001782. Fourth Dist., Div. Three. Feb. 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
DANA LEON NEER, Defendant and Appellant.

992

**COUNSEL**

Fred W. Anderson and William J. Sarrus for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, Acting P. J.**—Dana Neer appeals (Pen. Code, § 1538.5, subd. (m))[1] after pleading guilty to several controlled substance violations. He claims his suppression motion should have been granted because: (1) the warrant issued to search his home was not supported by probable cause; (2) the search pursuant to the defective warrant cannot be salvaged by the good faith exception to the exclusionary rule (*United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]); and (3) the warrant was executed in violation of the knock-notice requirements of section 1531. We agree with the third contention and conclude the section 1531 violation requires exclusion of the evidence seized in the subsequent search. Consequently, we do not address the first two issues raised by Neer.

I

On October 10, 1983, police officers obtained a search warrant for Neer's home. About 8:25 that evening, Detective Klein and three other officers arrived to serve the warrant. The porch light was on. Klein, wearing a police raid jacket and hat, approached the house with Officer Stedman. The officers detained Neer, who was working in the front yard, but were then unaware of his identity. Stedman shouted, "We're the police department, don't move . . . we have a search warrant."

---

[1]All statutory references are to the Penal Code unless otherwise specified.

The front door was open and lights were on inside. Klein approached until he reached the closed screen door. He could see a woman with a child sitting on a couch and a man standing in the kitchen area. Klein identified himself as a police officer and stated he had a search warrant. He "opened the door immediately" and went in. Klein testified he entered because he believed the occupants had heard both announcements and feared they would flee, destroy contraband or arm themselves.

II

■ Klein's entry violated section 1531.[2] First, the facts did not support a reasonable belief exigent circumstances permitted him to force entry. Second, he could not reasonably believe he had been refused entry by the occupants.

The fact Klein faced a screen door through which he could see did not excuse compliance with section 1531. (*People* v. *Peterson* (1973) 9 Cal.3d 717, 723 [108 Cal.Rptr. 835, 511 P.2d 1187].) He sought to justify his precipitous entry by claiming there were exigent circumstances—the occupants would flee, destroy contraband or arm themselves.

■ Compliance with the requirements of section 1531 is excused if specific facts known to the officer before his or her entry are sufficient to support a good faith belief compliance will increase his or her peril, frustrate the arrest, or permit the destruction of evidence. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 877 [109 Cal.Rptr. 304, 512 P.2d 1208]; *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 323-324 [82 Cal.Rptr. 348, 161 P.2d 628]; *People* v. *Flores* (1982) 128 Cal.App.3d 512, 521 [180 Cal.Rptr. 368].) But nothing Klein knew permitted an objectively reasonable belief exigent circumstances existed. (See *ibid.*) A generalized belief based on the fact this was a narcotics investigation is insufficient. (See *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706]; see also *People* v. *Benjamin* (1969) 71 Cal.2d 296, 299 [78 Cal.Rptr. 510, 455 P.2d 438].)

Klein's testimony can also fairly be read as stating a belief he had been refused entry. ■ But "[s]ection 1531 permits an officer executing a search warrant to break into the premises only if he [or she] is refused admission after announcing 'his [or her] authority and purpose.' Even where the police duly announce their identity and purpose, forcible entry is not permitted under the statute if the occupants of the premises are not first

---

[2]Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

given an opportunity to surrender the premises voluntarily. [Citation.]" (*Jeter* v. *Superior Court* (1983) 138 Cal.App.3d 934, 937 [188 Cal.Rptr. 351].)[3]

*Implied* refusal exists when there is unreasonable delay in responding to the officers' announcement *under the circumstances of the case.* (See *People* v. *Peterson, supra,* 9 Cal.3d 717; *Jeter* v. *Superior Court, supra,* 138 Cal.App.3d 934, 937; *People* v. *Gallo* (1981) 127 Cal.App.3d 828 [179 Cal.Rptr. 662].) But here, as noted above, there were no specific facts, such as shouting or running, to support an objectively reasonable belief the occupants had refused entry. (See *People* v. *Dumas, supra,* 9 Cal.3d 871, 877; *People* v. *Flores, supra,* 128 Cal.App.3d 512, 521.) Klein could not have reasonably believed there had been an implied refusal. He opened the screen door *immediately* after making the announcement on the porch.

And the record contains *no evidence* of the amount of time which elapsed between the first and second announcement. There is no convenient test for measuring the length of time necessary to support an implied refusal. It has been held silence for twenty seconds is sufficient where it is known someone is within the residence, suggesting no one intends to answer the door. (*People* v. *Elder* (1976) 63 Cal.App.3d 731, 739 [134 Cal.Rptr. 212], disapproved on other grounds in *People* v. *Chapman* (1984) 36 Cal.3d 98, 111, fn. 7 [201 Cal.Rptr. 628, 679 P.2d 62].) Thirty seconds has been held sufficient also. (*People* v. *Gallo, supra,* 127 Cal.App.3d 828.) By contrast, six seconds (*People* v. *Abdon* (1972) 30 Cal.App.3d 972 [106 Cal.Rptr. 879]); fifteen seconds (*Greven* v. *Superior Court, supra,* 71 Cal.2d 287); thirty seconds (*Duke* v. *Superior Court, supra,* 1 Cal.3d 314); and forty-five seconds (*People* v. *Norton* (1970) 5 Cal.App.3d 955 [86 Cal.Rptr. 40]) have been held inadequate under the circumstances of those cases.

Customarily, we defer to the trial court's determination in such factually grounded matters. (See *People* v. *Pacheco* (1972) 27 Cal.App.3d 70, 78 [103 Cal.Rptr. 583], citing *People* v. *Perales* (1970) 4 Cal.App.3d 773, 780 [84 Cal.Rptr. 604]; see also *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) ██ However, the record in this case simply does not support a finding there was either an exigency or implied refusal permitting Klein's forced entry. There was no suspicious

---

[3]The requirement the occupants *refuse* admittance before a forced entry is permitted distinguishes section 1531 from section 844. (See *People* v. *Schmel* (1975) 54 Cal.App.3d 46, 50-51 [126 Cal.Rptr. 317].) However, the two sections are otherwise comparable and reference to cases interpreting each is appropriate. (See *People* v. *Peterson, supra,* 9 Cal.3d 717, 722, fn. 7; *Duke* v. *Superior Court, supra,* 1 Cal.3d 314, 323; *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 292, fn. 6 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Schad* (1971) 21 Cal.App.3d 201, 207 [98 Cal.Rptr. 439].)

activity by the occupants and we do not know how much time elapsed between the first announcement and the entry. Neer's detention in the front yard cannot suffice to excuse compliance with the statute. Section 1531 was violated.

### III

The more difficult question is whether, after the enactment of California Constitution article I, section 28, subdivision (d) by Proposition 8 in June 1982, a section 1531 violation still calls for the exclusion of the evidence obtained. We conclude it does.

*Jeter* v. *Superior Court, supra,* 138 Cal.App.3d 934, 938, held exclusion is still required: "In *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 325, the California Supreme Court makes clear that an entry effected in violation of the knock and notice requirements of section 1531 renders any subsequent search and seizure unreasonable within the meaning of the Fourth Amendment of the Constitution of the United States and thus requires the exclusion of the evidence obtained under *Mapp* v. *Ohio* (1961) 367 U.S. 643, 660 [6 L.Ed.2d 1081, 1093, 81 S.Ct. 1684, 84 A.L.R.2d 933]. Since the court rested its holding in *Duke* not on the California Constitution but solely upon the Fourth Amendment to the United States Constitution, the holding is not affected by article I, section 28, subdivision (d) recently added to the California Constitution. That addition, with exceptions not relevant here, provides that 'relevant evidence shall not be excluded in any criminal proceeding . . . .' To pass muster under the supremacy clause of the United States Constitution this provision must be interpreted as not attempting to modify the binding effect of federal constitutional decisions affecting the admissibility of evidence such as *Mapp* v. *Ohio, supra,* 367 U.S. 643. Article I, section 28, subdivision (d) does not purport to repudiate *Mapp.*" (See also *People* v. *Gastelo, supra,* 67 Cal.2d 586, 588.)

*Jeter* was filed before our Supreme Court announced the effect of article I, section 28, subdivision (d) in *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744]. Does *Lance W.* undercut the holding of *Jeter* concerning the continuing vitality of the exclusionary rule in this context? Unlike our dissenting colleague, we conclude it does not.

*Lance W.* dealt with different factual and legal issues. The court addressed the continuing vitality of California's vicarious exclusionary rule. Prior to Proposition 8, a California defendant could move to exclude evidence seized in violation of the rights of another. The defendant had standing under the state Constitution to contest violations of the search and seizure provisions of both constitutions. But for purposes of the Fourth Amendment, the

United States Supreme Court had drawn the opposite conclusion—exclusion of evidence resulted *only* if the *personal privacy rights* of the defendant were invaded. (See, e.g., *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421].)

Thus, the question addressed in *Lance W.* was whether "this new constitutional provision . . . mandate[s] the exclusion of evidence obtained in violation of the search and seizure provisions of the federal Constitution (4th Amend.) or the state Constitution (art. I, § 13), *under circumstances in which the evidence would be admissible under federal constitutional principles.*" (*Id.*, at p. 879, italics added.)

Our case presents a different question. Here there is no United States Supreme Court precedent permitting the introduction of evidence against a criminal defendant after the violation of knock and notice requirements. Put another way, *Lance·W.* involved a situation where the holdings of the California and United States Supreme Courts on the reach of the exclusionary rule were in direct conflict. Proposition 8 requires the admission of evidence if not prohibited by the federal Constitution. Such was the case in *Lance W.* The same is not true here.

And taken as a whole, the language in the *Lance W.* majority opinion supports our conclusion. ■ Our state Supreme Court is powerless to mandate exclusion of evidence because of Fourth Amendment violations *only* when the United States Supreme Court has held otherwise.

"What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*Id.*, at pp. 886-887.) "The people have apparently decided that the exclusion of evidence is not an acceptable means of implementing those rights, *except as required by the Constitution of the United States.*" (*Id.*, at p. 887, italics added.) "Implicit in the limitation on the courts' power to exclude relevant evidence to the enumerated statutory exceptions is a limitation on the power of the court to create nonstatutory exclusionary rules, whether denominated rules of procedure, rules of evidence, or substantive rules, for the exclusion of unlawfully seized evidence if those ·rules afford greater protection to a criminal defendant than does the Fourth Amendment." (*Id.*, at pp. 888-889, fn. omitted.) "[S]ection 28(d) was intended to permit exclusion of relevant, but unlawfully obtained evidence, *only if exclusion is required by the United States Constitution* . . . ." (*Id.*, at p. 890, italics added.) And the majority in *Lance W.* "conclude[s] that Proposition 8 has abrogated both the 'vicarious exclusionary rule' under which a defendant had standing to object to

the introduction of evidence seized in violation of the rights of a third person, and a defendant's right to object to and suppress evidence seized in violation of the California, but not the federal, Constitution." (*Id.*, at p. 879.)

■ Drawn into a broader context, the holding of *Lance W.* signifies this: California cases calling for the *exclusion* of evidence under article I, section 13, whether redressing a state or federal constitutional violation, have been nullified. *However, those California cases which identify a Fourth Amendment violation and conclude the exclusion of evidence is required under the Fourth Amendment, are still sound law in the absence of a contrary United States Supreme Court opinion.* Hence, *Duke* v. *Superior Court, supra,* 1 Cal.3d 314, 325 and *Jeter* v. *Superior Court, supra,* 138 Cal.App.3d 934, 938, remain the law.

■ We must follow *Duke*. "The decisions of [the Supreme] [C]ourt are binding upon and must be followed by all the state courts of California." (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) "It is not for us to inquire what the law ought to be when the Supreme Court has emphatically informed us what the law is." (*Orange County Water District* v. *City of Riverside* (1959) 173 Cal.App.2d 137, 165-166 [343 P.2d 450].)

There are narrow exceptions to *Auto Equity Sales'* application of the doctrine of stare decisis. But they are not applicable here. ■ For example, a decision correct when rendered loses its force as precedent when a later statute changes the rule. (See, e.g., *People* v. *Valentine* (1946) 28 Cal.2d 121, 144 [169 P.2d 1]; *Lane & Pyron, Inc.* v. *Gibbs* (1968) 266 Cal.App.2d 61, 66 [71 Cal.Rptr. 817].) This is also true where a statute or constitutional provision is repealed. (See, e.g., *In re Jones* (1962) 57 Cal.2d 860, 862 [22 Cal.Rptr. 478, 372 P.2d 310].)

California Constitution, article I, section 28, subdivision (d) did affect the doctrine of stare decisis concerning the exclusionary rule. For instance, the relaxed federal rule for testing the sufficiency of search warrant affidavits (*Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317]) now applies in California (see, e.g., *Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929 [216 Cal.Rptr. 817]), despite the requirements of California Constitution, article I, section 13 (see *People* v. *Campa* (1984) 36 Cal.3d 870, 880 [206 Cal.Rptr. 114, 686 P.2d 634]). But that conclusion is consistent with *Lance W.,* which specifically eliminates exclusionary rulings based on the state Constitution.

The present situation is not comparable—*Duke* holds exclusion is required by the Fourth Amendment, not the California Constitution. Even assuming

some of the language of the *Lance W.* majority opinion could be extrapolated to suggest California courts may no longer say the federal Constitution requires the exclusion of evidence, there are two related reasons we decline to so interpret it. First, it is dictum (see *People* v. *Gregg* (1970) 5 Cal.App.3d 502, 506 [85 Cal.Rptr. 273]), and persuasive as it may be from our Supreme Court (see *Smith* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 418 [128 Cal.Rptr. 572]), it is also contrary to previous holdings the court has not specifically disavowed.[4] ██ Second, the *Lance W.* court was not addressing the issue before us and "cases are not authority for propositions not considered. [Citation.]" *(People* v. *Burnick* (1975) 14 Cal.3d 306, 317 [121 Cal.Rptr. 488, 535 P.2d 352].) We are not free to disregard *Duke* based on *Lance W.*

Moreover, *Duke* relies on *Mapp.* To the extent *Lance W.* can be read to *require* a United States Supreme Court declaration exclusion is required (see *In re Lance W., supra,* 37 Cal.3d 873, 885), *Duke* says *Mapp* is such a declaration.

*Duke* is explicit—exclusion *is* required by the Constitution of the United States. We defer to *Duke*'s clarity when the alternative is an exploration of *Lance W.*'s possible implications. This seems particularly apt when the *Lance W.* majority itself acknowledges several aspects of article I, section 28, subdivision (d) require resolution. (See *In re Lance W., supra,* at p. 886, fn. 6.)

Finally, we do not believe, as does our dissenting colleague, *United States* v. *McConney* (9th Cir. 1984) 728 F.2d 1195 or other lower federal court cases compel a contrary result. *McConney* deals with the issue of an exigency under the federal statutory equivalent to section 1531 (18 U.S.C. § 3109). It does not address the exclusionary rule. To hold *McConney* applies here would be to say federal interpretations of a federal statute now bind California courts in interpreting sections 844 and 1531. But *Lance W.* makes it clear *only the remedy of exclusion* has been affected. (See *In re Lance W., supra,* 37 Cal.3d 873, 886-887.)[5]

██ In addition, California courts are not bound by the decisions of lower federal courts even on federal questions. *(People* v. *Bradley, supra,*

---

[4]It was unnecessary to decide (see *People* v. *Gregg, supra,* 5 Cal.App.3d 502, 506) in *Lance W.* whether the California Supreme Court retained the power to declare a Fourth Amendment violation required exclusion of evidence.

[5]Moreover, we note 18 United States Code section 3109 codifies " 'a tradition embedded in Anglo-American law, . . . the reverence of the law for the individual's right of privacy in his house.' " *(Sabbath* v. *United States* (1968) 391 U.S. 585, 589 [20 L.Ed.2d 828, 833, 88 S.Ct. 1755], quoting *Miller* v. *United States* (1958) 357 U.S. 301, 313 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]; see also *People* v. *Bradley* (1969) 1 Cal.3d 80, 86-87 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Maddox* (1956) 46 Cal.2d 301 [294 P.2d 6].)

1 Cal.3d 80, 86.) They are but persuasive authority. To elevate *McConney* over California Supreme Court cases interpreting sections 844 and 1531[6] would upend this long-standing rule. *Lance W.* does not require that.

It is true the *Lance W.* majority obliquely notes a certain wavering, evidenced by *United States* v. *Leon, supra,* 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], in the United States Supreme Court's fealty to the exclusionary rule.[7] And it could be argued the prospects for the Fourth Amendment exclusionary rule in this general area of the law are not particularly bright. (See *Segura* v. *United States* (1984) 468 U.S. 796 [82 L.Ed.2d 599; 104 S.Ct. 3380].) Nevertheless, in *Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623], the United States Supreme Court analyzed a forced entry pursuant to section 844 to determine whether "the method of entering the home . . . offend[s] federal constitutional standards of reasonableness and therefore vitiate[s] the legality of an accompanying search." (*Id.,* at p. 38.)

The section 1531 violation mandates suppression of the evidence seized pursuant to the search warrant. Neer's section 1538.5 motion was erroneously denied. This issue disposes of Neer's appeal. Therefore, it is unnecessary to wade into the *Leon-Sheppard* quagmire anew and we express no opinion on the issues concerning the validity of the warrant itself.

The judgment is reversed and the case remanded for further proceedings consistent with the views expressed in this opinion.

Wallin, J.; concurred.

**CROSBY, J.**—I dissent. The majority continues to churn ancient history, an occupation better left to archeologists and historians than judges.

---

[6]See, e.g., *People* v. *Cook* (1978) 22 Cal.3d 67, 98 [148 Cal.Rptr. 605, 583 P.2d 130]; *People* v. *Peterson, supra,* 9 Cal.3d 717, 722-724; *People* v. *Hall* (1971) 3 Cal.3d 992, 997-998 [92 Cal.Rptr. 304, 479 P.2d 664]; *Duke* v. *Superior Court, supra,* 1 Cal.3d 314, 323-325; *People* v. *Bradley, supra,* 1 Cal.3d 80, 86-88; *People* v. *Benjamin, supra,* 71 Cal.2d 296, 298-299; *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 293-295; *People* v. *Rosales* (1968) 68 Cal.2d 299, 302-305 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Gastelo, supra,* 67 Cal.2d 586, 588-589.
On the continuing vitality of *Cook*'s major holding with respect to misstatements in search warrants, see *People* v. *Truer* (1985) 168 Cal.App.3d 437 [214 Cal.Rptr. 869]; *People* v. *Luevano* (1985) 167 Cal.App.3d 1123 [213 Cal.Rptr. 764].

[7]Interestingly, in a case recognizing the impact of *Leon* and its companion case, *Sheppard* [*Massachusetts* v. *Sheppard* (1984) 468 U.S. 981 [82 L.Ed.2d 737, 104 S.Ct. 3424], in California, another Court of Appeal dealt with a knock and notice issue as if Proposition 8 had no effect on it. (*People* v. *MacAvoy* (1984) 162 Cal.App.3d 746 [209 Cal.Rptr. 34].)

I

Ignoring a constitutional amendment (Cal. Const., art. I, § 28, subd. (d)) and compelling recent authority from the California Supreme Court (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744]), the majority holds the evidence should have been suppressed in this case because the officers executing the warrant failed to comply with Penal Code section 1531. As the majority recognizes, *Duke* v. *Superior Court* (1969) 1 Cal.3d 314 [82 Cal.Rptr. 348, 461 P.2d 628] and *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937] require us to conclude the entry into this home violated the Fourth Amendment. (See also *People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489].) In analyzing the application of the exclusionary rule after *Lance W.*, however, my colleagues have refused to follow binding precedent; and I cannot join them.

The California Supreme Court determined in *Duke*, "we must hold that an entry effected in violation of the provisions of section 844 or its companion section 1531 renders any subsequent search and seizure 'unreasonable' within the meaning of the Fourth Amendment. [Citations.]" (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 325.) But the same court has since held, "We agree that Proposition 8 did not repeal either section 13 or section 24 of article I [of the California Constitution]. The substantive scope of both provisions remains unaffected by Proposition 8. What would have been an unlawful search or seizure in this state before the passage of that initiative would be unlawful today, and this is so even if it would pass muster under the federal Constitution. What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*In re Lance W., supra,* at pp. 886-887.) Thus, despite the invalidity of the present search under the federal and state Constitutions, viewed in terms of California case law, federal law now determines whether there is an exclusionary remedy.

The remarkable holding my colleagues announce today is three-fold: (1) The exclusionary rule is to be applied in all cases of illegal searches unless the United States Supreme Court has specifically created an exception; (2) that court is the only source of federal law; and (3) lower courts are bound to follow obsolete but specific California precedent, such as *Duke,* to apply the exclusionary rule where it is not federally mandated, despite the elimination of this state's exclusionary rule and the holding of *Lance W.* In so concluding, the majority has apparently turned the holding of *Lance W.* on its head. Instead of considering whether federal law requires suppression in

this instance, as *Lance W.* mandates, the majority asks only whether the United States Supreme Court has said the exclusionary rule does *not* apply.

In other words, the majority proposes to continue to follow, and require lower courts to follow, volumes of superseded precedent until one of the two Supreme Courts finds the time to weed it out. Much as one might lament the rent in our Constitution created by Proposition 8 and implemented in *Lance W.*, to say nothing of the current United States Supreme Court's evident determination to restrict the scope of Fourth Amendment protections, it is not the place of an intermediate appellate court to ignore the will of the electorate as interpreted by a higher court. We ought to swallow the hemlock now and have done with it.

The majority's erroneous analysis evidently stems from confusion engendered by the rule that California courts are not bound by decisions of the lower federal courts. The extent to which this statement has continuing validity in Fourth Amendment jurisprudence after Proposition 8 and *Lance W.* is highly debatable, however. *People v. Rooney* (1985) 175 Cal.App.3d 634, 644 [221 Cal.Rptr. 49] does support the majority's view, but appears to have repeated the general rule without critical examination. The difficulty is this: We may not be bound by federal precedent beneath the Supreme Court level, but *are* bound by the Constitution of California and *Lance W.* And from them the rule is clear: Unless federal authority *requires* suppression for a breach of the Fourth Amendment, the exclusionary rule may not be applied.

Several courts have already rejected former Fourth Amendment grounded decisions of the California Supreme Court under the compulsion of Proposition 8 where federal decisions did not require suppression, both before and after *Lance W.* (See, e.g., *People v. Sanchez* (1985) 174 Cal.App.3d 343, 346 [220 Cal.Rptr. 53]; *People v. Gutierrez* (1984) 163 Cal.App.3d 332, 334 [209 Cal.Rptr. 376].)[1] It is true that explicit authority from the United States Supreme Court was available to guide those determinations, but I see no legal difference. I believe we must reassess *Duke* and *Rosales*

---

[1] *Sanchez* can be read to suggest the court interpreted *Lance W.* to hold that lower courts are released from following a more liberal Fourth Amendment determination of the California Supreme Court where the United States Supreme Court has found no violation on similar facts. This would be incorrect. *Lance W.* implements only that portion of the federal holding refusing to apply the exclusionary rule; the search remains illegal under California's interpretation of the Fourth Amendment. Thus, while I will recognize that this search violated the Fourth Amendment according to California law, since federal courts would not require suppression (because they would find no violation), I would hold *Lance W.* bars application of the exclusionary rule.

in light of a question there was no reason to reach in either of them:[2] Would federal law mandate exclusion in this case?

The clear answer is no. A review of decisions interpreting 18 United States Code section 3109, the similarly worded federal counterpart to Penal Code sections 844 and 1531, makes that clear. While both statutes codify " 'a tradition embedded in Anglo-American law, . . . the reverence of the law for the individual's right of privacy in his house' " (*Sabbath* v. *United States* (1968) 391 U.S. 585, 589 [20 L.Ed.2d 828, 833, 88 S.Ct. 1755], quoting *Miller* v. *United States* (1958) 357 U.S. 301, 313 [2 L.Ed.2d 1332, 1340, 78 S.Ct. 1190]), as we shall see, they are not always interpreted in the same way. There is, for example, no United States Supreme Court counterpart to *Duke*, but plenty of lower federal court authority to the contrary.

Curiously, although it relied on the United States Supreme Court's decision in *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317] against a motion to quash the search warrant in the superior court, the prosecution has yet to cite a federal case on the knock-notice issue. The prosecution merely argues, "Entry of the residence was lawful where there was substantial compliance with [Penal Code section 1531], where the officers had a reasonable apprehension of destruction of evidence, increase of peril, and frustration of purpose and when the purpose of the entry was already known to the occupants." Not so per *Duke* and *Rosales*. Nonetheless, the entry, like the warrant itself, *is* defensible under federal law.

*United States* v. *McConney* (9th Cir. 1984) 728 F.2d 1195, certiorari denied 469 U.S. 824 [83 L.Ed.2d 46, 105 S.Ct. 101], for example, is a very similar case. There, officers serving a search warrant saw the defendant through a screen door and quickly entered after knocking and announcing themselves. In language which appears equally applicable here, *McConney* explains the entry was not violative of federal knock-notice law: "When police have properly knocked and announced their identity and purpose, mild exigency is sufficient to justify simultaneous entry when entry can be accomplished without physical destruction of property. *United States* v. *Bustamante-Gamez,* 488 F.2d 4, 11 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). *Accord United States* v.

---

[2]California's exclusionary rule for search and seizure violations of *both* Constitutions was implemented independently. It was never fueled before Proposition 8 by federal energy. *People* v. *Cahan* (1955) 44 Cal.2d 434, 441-447 [282 P.2d 905, 50 A.L.R.2d 513] imposed the sanction of suppression before the Fourth Amendment was held applicable to the states by the Fourteenth Amendment in *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]. Consequently, the *Duke* court's application of the exclusionary rule does not mean our Supreme Court found federal law mandated suppression there. That question was irrelevant to the *Duke* decision.

*Whitney* 633 F.2d [902,] 909 [9th Cir. 1980]. Mild exigency may exist where there is a likelihood that the occupants will try to escape, resist, or destroy evidence. More specific inferences of exigency are necessary if entry may be obtained only by the physical destruction of property; an explicit refusal of admittance or lapse of a significant amount of time is necessary if the officers have no facts indicating exigency. *United States* v. *Bustamante-Gamez,* 488 F.2d at 12. But here the officers found an open door. [¶] We emphasize, and McConney concedes, that the agents knocked and announced their entry. They simultaneously opened an unlocked wire screen door through which they observed McConney and a second then unknown person seated inside. Agent Olson had recognized McConney as he observed him through the door, and feared for his safety and that of the other officers if McConney were allowed time to arm himself. [¶] Whether the circumstances present sufficient exigency necessarily involves judgment. An unjustified but sincere fear by an officer cannot excuse noncompliance or the protection of the occupants' privacy interest would depend on no more than an officer's anxiety. Here, however, there is no reason to discount either the sincerity or the reasonableness of the agent's concern." (*United States* v. *McConney, supra,* at p. 1206.)

Although Professor LaFave says, "whether passage through an open door is the type of entry which ordinarily requires prior announcement is a matter which continues to divide the courts" (2 LaFave, Search and Seizure (1978) § 4.8, subd. (b), pp. 126-127), my research reveals *McConney* and *Busta-mante-Gamez* to be representative of current federal knock-notice authority. (See, e.g., *Simons* v. *Montgomery County Police Officers* (4th Cir. 1985) 762 F.2d 30, 32-33; *United States* v. *Couser* (4th Cir. 1984) 732 F.2d 1207, 1208; *United States* v. *Whitney, supra,* 633 F.2d 902, 909; *United States* v. *Jackson* (4th Cir. 1978) 585 F.2d 653, 662; *United States* v. *Lopez* (7th Cir. 1973) 475 F.2d 537, 541; cf. *United States* v. *Harris* (D.C. Cir. 1970) 435 F.2d 74.) And comparing the current facts to those of *McConney,* I find it perfectly reasonable for an officer to expect a major narcotics dealer to maintain a readily available arsenal. Both informants claimed Neer, like McConney, had "biker affiliations" and both feared his violent retaliation. Thus, Klein had sufficient information to constitute a "mild exigency," whether or not he believed in good faith in the validity of the warrant itself, a question to be considered anon. (See, e.g., *People* v. *Mendoza* (1986) 176 Cal.App.3d 1127, 1130 [224 Cal.Rptr. 145].)

Although we *are* bound under *Duke* and *Rosales* to find the entry here violated the Fourth Amendment, we are no longer permitted to apply the exclusionary rule. After *Lance W.* federal law does not mandate exclusion, and that is the end of it. The majority's reliance on *Jeter* v. *Superior Court* (1983) 138 Cal.App.3d 934 [188 Cal.Rptr. 351] to hold otherwise is ill-

conceived. *Jeter* preceded *Lance W.* and obviously did not anticipate the removal of the remedy of exclusion in searches found by California courts to violate the Fourth Amendment. Nothing of the sort is considered in the opinion.

It could be argued the prosecution's failure to defend the warrant by citation to federal search and seizure law, specifically the *Bustamante-Gamez/McConney* line of cases, should foreclose consideration of it at this late date. (*Giordenello* v. *United States* (1958) 357 U.S. 480, 488 [2 L.Ed.2d 1503, 1510; 78 S.Ct. 1245]; *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 640-641 [108 Cal.Rptr. 585, 511 P.2d 33].) But there are several reasons why this is not true. First, the district attorney *did* claim exigent circumstances excused strict compliance with Penal Code section 1531. He simply relied on far less accommodating California authority. Second, where a pure question of law is presented, even a "change in theory may be permitted by the reviewing court. [Citation.]" (*People* v. *Carr* (1974) 43 Cal.App.3d 441, 445 [117 Cal.Rptr. 714]; see *Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929, 941-942 [216 Cal.Rptr. 817].)

As our Supreme Court recently held, the "evidence supporting the . . . theory was fully developed by both the prosecution and the defense. Defendant had an opportunity to cross-examine and, indeed, did cross-examine . . . regarding the facts supporting this theory. Thus defendant does not appear to have been prejudiced by any lack of formal notice. The factual basis for the theory is fully set forth in the record, and it does not appear that any further evidence could have been introduced . . . . [¶] To close our eyes to the clear applicability of the [new theory] would run contrary to the settled principle of appellate review that a correct decision of the trial court must be affirmed on appeal even if it is based on erroneous reasoning. [Citations.]" (*Green* v. *Superior Court* (1985) 40 Cal.3d 126, 138, fn. omitted [219 Cal.Rptr. 186, 707 P.2d 248]; see also *People* v. *Barbarick* (1985) 168 Cal.App.3d 731, 735, fn. 1 [214 Cal.Rptr. 322]). Here, too, the theory of exigent circumstances was fully litigated and, unlike *Green,* specifically relied upon by the prosecution in the superior court. Thus, I would deny suppression here, despite the violation of section 1531 of the Penal Code and the Fourth Amendment. For this reason I must turn to the other highly significant issue presented by this appeal, the question of whether the warrant itself should have been quashed and the evidence suppressed accordingly.

## II

The search warrant affidavit was prepared by Investigator Klein. He relied on information from two sources, one a known informant whose background

and reliability were wholly omitted from the affidavit, the second an anonymous telephone tipster.

In February 1983, Klein received a report from a fellow officer that a "confidential citizen-informant" had identified Neer, who resided on West Carol Drive in Fullerton, as a major dealer in narcotics. According to the informant, Neer generally kept between ten and fifteen pounds of cocaine in a floor safe by the fireplace in a living room converted from a garage. Klein confirmed Neer had been issued a drivers license bearing the West Carol Drive address and that his date of birth and description matched those given by the informant. He also learned Neer had previously been booked by Fullerton police for various offenses, including burglary, auto theft, and sale of dangerous drugs.

In March Klein telephoned the informant who again alleged Neer was a heavy distributor of cocaine. The informant claimed to have seen large quantities of the stuff inside the West Carol Drive residence on many occasions. Klein contacted the informant once again in June. This time he was advised Neer had become involved in the sale of methamphetamine in pound quantities. He was told Neer "flies out of the Los Angeles International Airport to the San Francisco area to pick up his drugs, then flies back to Los Angeles where he drives the drugs from the airport to his residence in a green Gremlin." The informant also expressed reluctance to provide additional assistance because Neer is violent and has "'biker' affiliations."

Klein surveilled the West Carol Drive residence on several occasions and observed a green Gremlin in the driveway. A registration check revealed the vehicle had been sold and only a notice of transfer, without the name of the new registered owner, was on file.

In October Klein overheard Officer Grob speaking on the phone to an anonymous male caller. Grob said he was told "a subject by the name of Dana Neer, living on Carol Drive in the City of Fullerton, was involved in the sale of cocaine and marijuana from his residence" and there was a safe in his living room. Klein was also present when the same anonymous informant called Grob again some thirty minutes later. In this conversation the informant claimed to have observed cocaine in Neer's home on October 7, 1983, and also said he had been dealing in that substance, as well as marijuana, over the past year. The caller hung up after stating he was afraid he would be killed if Neer found out about the call.

The affidavit ended with Klein's resume in narcotics enforcement: A nine-year police veteran, he spent the previous three in narcotics where he participated in over five-hundred investigations and compiled more than one-

thousand arrests. He is a college graduate and has attended several courses and schools for narcotics investigators. He has also qualified numerous times in court as an expert concerning narcotics abuse and enforcement. He concluded, "Based on the information provided by two separate informants, and based on your affiant's expertise and training in the area of narcotics, your affiant believes that the items sought will be found at the places indicated and described and your affiant requests that the search warrant be approved for service." It was: The warrant issued on October 10, 1983.

Since this appeal was first briefed, several major changes in the law have combined to severely restrict the exclusionary rule in cases involving searches pursuant to warrant. (*United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], *Illinois* v. *Gates, supra,* 462 U.S. 213, *In re Lance W., supra,* 37 Cal.3d 873; see also *Higgason* v. *Superior Court, supra,* 170 Cal.App.3d 929.) At our invitation the parties filed supplemental briefs to address these developments.

We first explored the new legal landscape in *Higgason.* There we held a search warrant was issued without probable cause because the affidavit simply recited essentially uncorroborated anonymous tips. This case is similar; the present affidavit is only slightly better.

Although one of the sources is labeled a "citizen-informant," there is absolutely nothing to support that conclusion in Klein's affidavit, not one word concerning the individual's background or motivations. The applicable rule is well established: "'A "citizen-informant" is a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. [Citations.] It is reasonable for police officers to act upon the reports of such an observer of criminal activity. [Citations.] [¶] A "citizen-informant" is distinguished from a mere informer who gives a tip to law enforcement officers that a person is engaged in the course of criminal conduct. [Citations.] Thus, experienced stool pigeons or persons criminally involved or disposed are not regarded as "citizen-informants" because they are generally motivated by something other than good citizenship. [Citations.]' (*People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814-815 [124 Cal.Rptr. 585].) The designation 'citizen-informant' is just as conclusionary as the designation 'reliable-informant.' In either case the conclusion must be supported by facts stated in the affidavit. [Citations.]" (*People* v. *Smith* (1976) 17 Cal.3d 845, 850-851 [132 Cal.Rptr. 397, 553 P.2d 557].) The affidavit before us contains no such facts, however; and both informants must consequently be considered unreliable, at least under the law of California. (*Id.,* at pp. 852-854; *People* v. *Scoma* (1969) 71 Cal.2d 332, 339 [78 Cal.Rptr. 491, 455 P.2d 419].)

Since the affidavit on its face was based on little more than uncorroborated gossip, our Constitution would have required suppression of the evidence before Proposition 8 abolished California's exclusionary rule. (Cal. Const., art. I, § 28, subd. (d); *In re Lance W., supra,* 37 Cal.3d 873; see *People* v. *Campa* (1984) 36 Cal.3d 870, 884 [206 Cal.Rptr. 114, 686 P.2d 634] and *People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 756-757 [195 Cal.Rptr. 311].) In the trial court the prosecution successfully defended the warrant on the basis of the federal "totality of the circumstances" test of *Illinois* v. *Gates, supra,* 462 U.S. 213. As in *Higgason,* the prosecutor did not anticipate *Leon* and offered no evidence or argument concerning good faith.

This warrant is not supportable under *Gates,* however. Two untested individuals, or perhaps only one,[3] were the sole sponsors of the tales of narcotics possession at Casa Neer; and the information from the known informant was long since stale. (Cf. *People* v. *Ramirez* (1984) 162 Cal.App.3d 70 [208 Cal.Rptr. 128] [where the informant was of the "reliable" variety].) Neer had previous arrests for drug dealing and other crimes but apparently no convictions, and certain other largely innocuous information was provided and confirmed in part. Unlike *Gates,* however, the description of Neer's methods of transporting contraband between the San Francisco and Los Angeles, although alleged, was not confirmed. The totality of these circumstances provided suspicion, not probable cause. The warrant should not have issued, even under federal law.

As noted above, however, the validity of a warrant itself is no longer the key factor in a suppression hearing, merely a first step in the analysis. The Supreme Court in *United States* v. *Leon, supra,* 468 U.S. 897 decided suppression will only be available, with certain exceptions noted below, where the warrant is both invalid *and* served in bad faith; and as to pending cases, *Leon* has been held to be retroactive. (*Higgason* v. *Superior Court, supra,* 170 Cal.App.3d 929, 941; *People* v. *MacAvoy* (1984) 162 Cal.App.3d 746, 760 [209 Cal.Rptr. 34]; *People* v. *Helmquist* (1984) 161 Cal.App.3d 609, 616 [207 Cal.Rptr. 718].)[4]

The prosecution failed to argue or offer evidence of good faith in the superior court; but, as the majority held in *Higgason,* the issue is cognizable

---

[3]Although he claimed there were two, Klein did not personally talk with the anonymous caller, a male; and the affidavit carefully masks the sex of the so-called citizen-informant.

[4]Has the police officer now replaced the magistrate in the hierarchy of search warrant practice? Hopefully not. The importance of the judge's constitutional responsibility to conscientiously reject warrants unsupported by probable cause is, however, magnified by the virtual elimination of the remedy of suppression. The buck now stops there. After *Leon* no court can undo what should not have been done unless the executing officer acted without good faith. (See *Higgason* v. *Superior Court, supra,* 170 Cal.App.3d at p. 952 (conc. opn. of Crosby, J.).)

on appeal. (*Higgason* v. *Superior Court, supra,* 170 Cal.App.3d at pp. 949-950 and 953, fn. 2; but see pp. 945-946.) Other courts considering the issue have agreed. (See, e.g., *People* v. *Lopez* (1985) 173 Cal.App.3d 125, 139 [218 Cal.Rptr. 799]; *People* v. *MacAvoy, supra,* 162 Cal.App.3d at p. 763; and *People* v. *Helmquist, supra,* 161 Cal.App.3d at p. 618.) Also, the Court of Appeal *has* been able to make a good faith determination from a cold record in previous cases. (*People* v. *Lopez, supra,* at p. 142; *Higgason* v. *Superior Court, supra,* at pp. 951-952 (conc. opn. of Crosby, J.); *People* v. *MacAvoy, supra,* at pp. 763-765; *People* v. *Helmquist, supra,* at p. 618.)

The question is much more difficult here, however. The defense never moved to traverse this warrant, only to quash it based on the alleged facial insufficiency of the affidavit. Thus, Klein's testimony was concentrated on the service issue and barely touched on the preparation of the affidavit and acquisition of the warrant. Can a good faith determination be made on this record?

A related difficulty must first be considered. Is good faith to be determined objectively or subjectively, or both? Even if the standard is purely an objective one, can evidence be presented as to the facts surrounding a particular warrant or must the ruling be made from a review of the warrant and affidavit alone? For example, should the prosecution be able to prove officer Klein was in possession of sufficient information to substantiate his claim that the so-called "citizen-informant" met the legal definition?

As I noted in *Higgason,* "Although I have located none which has been remanded for [an evidentiary hearing], I concede some recent cases seem to support the notion evidence might be appropriately offered on the subject of good faith: E.g., 'There is no evidence indicating that Officer White or the other officers who accompanied him were acting in bad faith, and we therefore find the search was conducted with a good faith belief in its validity. [¶] The next (and more important) question is whether the good faith belief in the validity of the warrant was *objectively reasonable.*' (*People* v. *MacAvoy, supra,* 162 Cal.App.3d at p. 763; see also *Massachusetts* v. *Sheppard* [1984] 468 U.S. 981, 990-991 [82 L.Ed.2d 737, 745, 104 S.Ct. 3424].)" (*Higgason* v. *Superior Court, supra,* 170 Cal.App.3d at p. 951 (conc. opn. of Crosby, J.).)

Professor LaFave persuasively argues the *Leon* standard is clearly intended to be an objective one in a passage which merits quotation at length: "[T]he *Leon* majority attempted to . . . formulat[e] this new exception to the exclusionary rule in terms which do not depend upon the subjective state of mind of the police involved in the particular case. The Court stated that 'the officer's reliance on the magistrate's probable-cause determination and

on the technical sufficiency of the warrant he issues must be objectively reasonable,' and went on to discuss this point in terms which make it quite clear that what the Court has adopted is a *purely* objective test rather than one which has both objective and subjective components. . . . [¶] In solving this particular problem [of attempting to peer into the minds of officers] in this particular way, the *Leon* Court has placed this new exclusionary rule exception on an even shakier foundation. The Court's rationale . . . was that a police officer cannot be deterred when he neither knew nor should have known that he was acting illegally, but now we learn that if the searching officer in the individual case *actually knew* in advance that his intended search was illegal this is no bar to admitting the evidence so long as 'a reasonably well-trained officer' would not have had such knowledge. Thus, even under the Court's own narrow view of the deterrence function, *Leon* sometimes permits the admission of evidence notwithstanding the existence of circumstances in which suppression for purposes of deterrence would be an especially compelling course of action. In other words, what the Court calls a 'good-faith exception' really is not that at all, for it extends to certain situations in which there was no good faith whatsoever." (1 LaFave, Search and Seizure (1986 pocket supp.) § 1.2, p. 22, subd. (d), fn. omitted.)

In *Massachusetts* v. *Sheppard, supra,* 468 U.S. 981, *Leon's* sister case, the Supreme Court considered evidence taken in the trial court concerning an error in preparing a search warrant in order to determine the good faith question. Thus, based on *Sheppard* and the language discussed above by Professor LaFave, it appears evidentiary hearings will be proper in appropriate cases; but the standard to be applied will be a purely objective one. Here, of course, no such hearing occurred in the trial court; and for reasons to follow I will conclude that this case should be remanded for that purpose.

It is not readily comprehensible that an officer of Klein's experience, a self-proclaimed expert in narcotics enforcement, could have served this warrant with any confidence in its validity, much less a good faith belief, assuming he gave that question the slightest thought after the warrant was issued.[5] The affidavit is based on stale information from one unreliable informant, an anonymous tip from perhaps another, Neer's previous arrest for an alleged drug sale, and precious little else. By contrast, in *Gates,* although the informant was anonymous, he or she supplied a detailed itinerary of a rather unusual journey by alleged drug dealers Susan and Lance Gates. When police surveillance of the couple's movements substantially

---

[5]One of the many fictions we must indulge while pondering this issue is that, in addition to knowing of the then very recent *Gates* decision and anticipating *Lance W.* which appeared much later, Klein also had the remarkable prescience to predict the new power of police nullification conferred still later in *Leon.*

corroborated the tip, it was obviously reasonable to entertain a good faith belief the whole story was true. Nothing comparable emerged here.

On the other hand, Klein personally talked to one of the informants on two occasions; and that individual may have been quite persuasive. In addition, Neer does have a criminal record; and the first informant's neutral information concerning his description, residence, and vehicle was accurate enough. Also, as in *Higgason,* it is troubling, to say the least, that the warrant was signed by a magistrate:[6] An officer does have some as yet not fully defined right to rely on the legal expertise of a judge. (See *Massachusetts* v. *Sheppard, supra,* 468 U.S. 981.) In short, with these conflicts in the evidence, there is simply no way to resolve the good faith issue on a cold record here.

Moreover, since the parties did not anticipate *Leon,* there may be considerable evidence which was not presented on the question of good faith. For example, did one of the sources actually meet the definition of a "confidential citizen-informant?" Why was this information omitted from the affidavit? How did a such a person, who is presumably not involved in criminal activity, have constant access to large quantities of cocaine over a long period of time? Based on this informant's statements alone, did Klein attempt to obtain a warrant? Was his application rejected?

All these and a number of other questions may be relevant in a "good faith" hearing. Consequently, I would remand the matter to allow the good faith determination to be made where it should ordinarily be done, in the trial court in a renewed suppression hearing.

Respondent's petition for review by the Supreme Court was denied May 8, 1986. Lucas, J., and Panelli, J., were of the opinion that the petition should be granted.

---

[6]Still more troubling (and puzzling) is the warrant's survival of successive attacks in the lower courts pre-*Leon.*